**SO ORDERED.**

**SIGNED this 14 day of June, 2010.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re: )
)
JAMES STUART BRAUN and ) Case No. 07-41524
DENISE YVONNE BRAUN, )
)
Debtors. )
)

**MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Trustee's Motion for Summary Judgment.[1] The Trustee seeks summary judgment on Debtors' Motion to Abandon,[2] which seeks, *inter alia*, an order requiring the Trustee to abandon $5,000 to PCG Consulting, Inc. on the basis that those funds are not property of the estate. The parties have fully briefed this issue, and the Court is ready to rule. For the reasons set forth below, the Court denies the Motion for Summary Judgment, and sets this

---

[1] Doc. 167.

[2] Doc. 153.

matter for trial to determine who owned the property from which the proceeds were derived on the date of filing.

By virtue of 28 U.S.C. § 157(b)(2)(A) and (E), this is a core proceedings over which this Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a).

**I.     FINDINGS OF FACT**

Debtors' brief in opposition to the motion for summary judgment fails to comply with either Fed. R. Civ. P. 56 or D. Kan. LBR 7056.1. Pursuant to D. Kan. LBR 7056.1(b)(1),

> A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. **Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record on which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.**[3]

Debtors' response fails to specifically address any of the separately numbered statements of fact set forth in the Trustee's initial brief and does not cite to the record in an attempt to controvert the Trustee's statements of fact. Instead, the response simply states "The debtors dispute and deny all factual allegations set forth by the trustee unless specifically admitted herein." That response is a wholly inadequate response to a summary judgment motion. For that reason, the Court will deem admitted all of the Trustee's properly supported statements of fact for purposes of this motion.[4]

Debtors' response also raises additional factual allegations, but again fails to comply with D. Kan. LBR 7056.1(b)(2). That rule provides:

---

[3] Emphasis added.

[4] *See* LBR 7056.1(a) (stating "The court will deem admitted for the purpose of summary judgment, all material facts contained in the statement of the movant unless the statement of the opposing party **specifically** controverts those facts." (emphasis added)).

2

> If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must include each additional fact in a separately numbered paragraph, **supported by references to the record**, in the manner required by subsection (a).[5]

Because these additional statements of fact contain no citations to the record, the Court will not consider any facts not contained in the Trustee's initial brief in deciding this motion for summary judgment. Based upon the properly supported statements of uncontroverted facts contained in the parties' briefs and the record in this case, the Court makes the following findings of fact.

Debtors filed their Chapter 7 petition under the Bankruptcy Code on October 31, 2007. Prior to filing their petition, Debtors formed a company known as Viewpoint Technology, Inc. ("Viewpoint"). Viewpoint was the original registrant of the Domain Name "Aggieville.com" (the "Domain Name"). Kansas State Bank ("KSB") claims a security interest in all of Viewpoint's assets, including the Domain Name.[6] Debtor Denise Braun also formed PCG Consulting, Inc. ("PCG") in 2005, prior to the filing of the petition.[7]

Prior to the filing date, Denise Braun charged multiple expenses on her personal American Express account related to the business operations of PCG, including travel, meals and software expenses totaling in excess of $5,000. She also charged Domain Name expenses on her personal

---

[5] Emphasis added.

[6] Doc. 156 is the "Creditor's Statement on Debtor's Motion to Abandon and Trustee's Objection to Debtors' Motion to Abandon," filed by Kansas State Bank. In that pleading, Kansas State Bank claims it is entitled to any proceeds relating to the domain name, "Aggieville.com," by virtue of the security interest and the terms and conditions of the security agreement. Alternatively, the bank claims it is entitled to any proceeds of the sale of that domain name even if such name is not abandoned by the Trustee. The Bank ultimately prays that "if the Court grants the Debtors' Motion to Abandon, that the Bank be entitled to any proceeds relative to the domain name" and if the motion is not granted, that it be entitled to such proceeds pursuant to its security agreement with Viewpoint Technologies, Inc. Kansas State Bank has not filed any response to the Trustee's summary judgment motion, however.

[7] Exhibit D attached to Debtors' response. Doc. 169, page 13. That document also indicates the last annual report was filed in December 2006, over 3 years ago, and that the business forfeited its corporate status on July 15, 2008.

3

American Express account, reimbursement for which Debtors claim Viewpoint may owe Debtors. In addition, Debtor James Braun also charged multiple expenses on his personal American Express account related to the business operations of PCG, including travel, meals and software expenses totaling in excess of $5,000, and also charged domain name expenses on that account, as well. As of the date of filing, Denise Braun's American Express account had an unpaid balance of $13,539.46 and James Braun's American Express account had an unpaid balance of $17,530.32.

Contemporaneously with the filing of their bankruptcy petition, Debtors filed their bankruptcy schedules ("schedules") and statement of financial affairs ("SOFA"), all of which were signed under penalty of perjury. Debtors' original Schedule B did not disclose that they had any interest in Viewpoint Technologies, Inc. or PCG Consulting, Inc.

On November 21, 2008, over a year after they filed their petition and approximately five months after the United States Trustee had filed a Complaint to deny their discharge under 11 U.S.C. § 727(c), (d) and (e), Debtors filed an Amended Schedule B. This was the first time they had disclosed their interest in both Viewpoint and PCG. In the amendments, they also disclosed that PCG (not Viewpoint) had sold the Domain Name for $5,000 after the filing of the petition. The Court has been provided no evidence when (or how) Viewpoint transferred the rights in the Domain Name to PCG, or for what consideration.

Although not disclosed on the Amended Schedule B until November of 2008, Debtors did voluntarily turn over the $5,000 from the sale of that Domain Name immediately following the filing

4

of the Trustee's Motion for Turnover on February 26, 2008.[8] It is this $5,000 payment for the sale of the Domain Name that is at issue in this case.

As noted above, Viewpoint was the original registered owner of the Domain Name. At some point prior to the filing of their bankruptcy petition, Debtors used their personal American Express card to renew the Domain Name. Debtors claim this payment was made on behalf of PCG, and that PCG's assets were later used to reimburse Debtors for this expense. On November 30, 2007, Network Solutions, Inc. registered a change in the registrant for the Domain Name from Viewpoint to University Bookstore, Inc.

On December 18, 2007 (about 45 days post-petition), Debtors deposited into the PCG bank account the $5,000 they had received from the sale of the Domain Name. The proceeds from the sale of the Domain Name were commingled with other funds and were spent by Debtors by virtue of payments or transfers from the PCG checking account. By January 15, 2008, all proceeds from the sale of the Domain Name had been expended.

On February 26, 2008, the Trustee filed a Motion for Turnover seeking an order requiring Debtors to turnover the $5,000 they had received from the sale of the Domain Name. On February 28, 2008, the Trustee withdrew the Motion for Turnover because Debtors voluntarily complied with the motion and delivered $5,000 to the Trustee.

Nearly nine months later, on November 21, 2008, Debtors filed an amended Schedule B through new counsel, indicating that the Domain Name was owned by PCG on the date of filing, and

---

[8] Doc. 47. *See also* Withdrawal of Trustee's Motion for Turnover (Doc. 49), filed two days after the motion for turnover, which states that the Trustee had received the funds requested.

5

Case 07-41524    Doc# 189    Filed 06/14/10    Page 5 of 12

that PCG had no assets or liabilities as of the date of filing.[9] On December 30, 2009, Debtors filed the Motion to Abandon that is at issue here, seeking an order requiring the Trustee to abandon to PCG the $5,000 Debtors voluntarily turned over to the Trustee on or about February 28, 2008.[10] Although Debtors' motion seeks turnover to PCG, Debtors brief in opposition to the Trustee's summary judgment motion instead indicates "the funds paid to the trustee [should] be abandoned back to them"

Additional facts will be discussed below, when necessary.

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[11] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[12] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[13] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[14]

---

[9] According to a State of Kansas business entity search, PCG is no longer an active Kansas corporation, having forfeited its standing for failing to file its annual report.

[10] Emphasis added, at page 8.

[11] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[12] *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

[13] *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[14] *Id.* (citing *Anderson,* 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[15] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[16]

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[17] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[18] Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[19]

## III. ANALYSIS

Debtors initiated this contested matter seeking an order requiring the Trustee to abandon, and thus return to PCG, any interest in the $5,000 in proceeds from the sale of the Domain Name.[20]

---

[15] *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[16] *Id.* (citing *Celotex,* 477 U.S. at 325).

[17] *Id.* (citing Fed. R. Civ. P. 56(e)).

[18] *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[19] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[20] The motion to abandon also included a request that the Trustee abandon a potential cause of action for legal malpractice against Lloyd Graham (Debtors' prior bankruptcy attorney) as well oil and gas interests. However, only the proceeds from the sale of the Domain Name are at issue in this summary judgment motion.

Pursuant to 11 U.S.C. § 544(b),[21] the Court may order the Trustee to abandon any <u>property of the estate</u> that is burdensome to the estate or that is of inconsequential value and benefit to the estate. In order to prevail on their motion, Debtors bear the burden of proving that the property is either burdensome or of inconsequential value and benefit to the estate,[22] or is not property of the estate.

Debtors claim that the Domain Name—and thus the proceeds from the sale of that Domain Name, are not property of the estate. Alternatively, Debtors ask that the Trustee be required to use the $5,000 proceeds from the sale of the Domain Name to pay any creditors of PCG, as that corporate entity is no longer active and Debtors claim it is in the process of winding down.[23]

The central issue in this contested matter is who owned the rights to the Domain Name on the date of filing. There are three potential owners—Viewpoint, PCG, and Debtors—and at least some evidence supports a claim of ownership by each of them.

The Trustee correctly points out that the costs associated with the most recent registration of the Domain Name prior to the bankruptcy filing were paid by Debtors' personal credit cards. Although this is certainly evidence of ownership by Debtors, it does not conclusively establish that Debtors, and not PCG or Viewpoint, owned the rights to that Domain Name on the date of filing. If Debtors were reimbursed for the registration expense by PCG or Viewpoint, which some of the

---

[21]This bankruptcy was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted.

[22]*In re Dillon*, 219 B.R. 781, 785 (Bankr. M.D. Tenn. 1998).

[23]The Court agrees with the Trustee that this is an odd request, since it is Debtors' subsequent attorney who assisted the Debtors in filing the amended Schedule B, under oath, that very specifically says that PCG <u>had</u> no liabilities on the date of the filing of the bankruptcy (or at the very least, on the date of the filing of that amendment).

8

evidence at least suggests, it is very possible that the property belonged to one of those corporate entities.

Debtors contend that the Domain Name was owned by PCG on the date of filing. This contention is only supported by Debtors's amended Schedule B, which indicates that PCG was the owner of the Domain Name and sold it after the filing of the petition. Debtors admit that they paid for the renewal fees by using their personal credit cards, but contend that PCG funds were used to reimburse them for those costs.

If the Domain Name was in fact owned by PCG on the date of filing, then the proceeds from the sale would have belonged to PCG, and the estate's interest in the property would be limited to assuming Debtors' ownership interest in the corporation. Although it is likely the money would eventually be paid over to the estate, which became the 100% owner of PCG when the bankruptcy was filed, a formal winding down of the corporate entity, including payment of any creditors of PCG, may be required before the bankruptcy estate can retain any equity in that business, again as the sole shareholder.

A third possible outcome is that the Domain Name was owned by Viewpoint on the date of filing. This contention is supported by the document generated from Network Solutions showing that the Domain Name was transferred by Viewpoint to University Bookstore shortly after the bankruptcy filing.[24] In other words, one might presume that only the owner of the Domain Name would have the right to transfer it. But because KSB has a security interest in all of Viewpoint's

---

[24]Debtors filed a motion to exclude the Court's consideration of this document, on the basis that it is hearsay (Doc. 165 filed March 24, 2010), and argue it cannot be used to support the Trustee's objection to their Motion to Abandon. There is no docketed response to that Motion. Because the Court finds that summary judgment is not appropriate in this case, the Court will take up the admissibility of that document at trial if the Trustee offers it and if Debtors contemporaneously object to its admission. The Court does order the Trustee to file a written response to the Motion within 21 days of entry of this order.

9

property, if Viewpoint is determined to have owned the property on the date of filing, then it would likely be KSB, and not the Trustee or Debtors, that would be entitled to the $5,000 from the sale of this property.

The Court thus finds that there is at least some evidence in this case that tends to support an ownership claim of all three potential owners— Debtors, PCG and Viewpoint. Based upon this evidence, including the properly supported claims made by the Trustee in support of her motion for summary judgment as well as the sworn statements made by Debtors in their Amended Schedule B, the Court finds that summary judgment is simply not the appropriate method of deciding this issue.

The Trustee contends that summary judgment is appropriate even if PCG is found to be the owner of the Domain Name on the date of filing, because the Trustee likely has claims against PCG under Chapter 5 of the Bankruptcy Code, and because Debtors were the 100% owners of PCG on the date of filing and, therefore, the Trustee would be entitled to the funds as the sole shareholder of that corporate entity (which apparently no longer exists). In regard to any potential claim under Chapter 5, the Trustee has not initiated any such claim, and the Court is not in the position to determine whether any such claim would be successful. At best, the Court could hold this motion in abeyance pending the filing, and determination of any such proceeding.

As for the Trustee's contention that the estate would be entitled to the $5,000 as the sole shareholder of the now defunct PCG, the Court agrees with Debtors that before any final distribution to shareholders could be made, PCG, as a Kansas Corporation, would likely need to be formally wound down pursuant to K.S.A. 17-6807. Pursuant to K.S.A. 17-6810, payments must first be made to creditors of the now defunct corporation, prior to any distribution to shareholders (again, assuming there are any creditors, which Debtors' sworn schedules deny).

That said, the Court realizes that a finding in Debtors' favor (that PCG was the owner of the property on the date of filing) will likely result in the funds ultimately being retained by the estate as a distribution from PCG to its shareholders. This is, again, because Debtors claim PCG has no liabilities. Although that may be the ultimate outcome, the Court does find that the requirements of Kansas law regarding the winding down of corporate entities must first be followed, and it must be determined whether actual liabilities of PCG exist.[25] After payment of any claims, any remaining funds would be distributed to the estate as the remaining shareholder (if the Court ultimately determines PCG was the true owner, as Debtors' Motion prays).

## IV. CONCLUSION

For the reasons stated, the Court denies summary judgment to the Trustee. There are material questions of fact as to who owned the Domain Name on the date of the filing of the petition, and, thus, who is entitled to the proceeds from the sale of that Domain Name. There is at least some evidence in the record to support claims that the Domain Name was owned by Viewpoint, PCG or Debtors. If the Domain Name was owned by Viewpoint, then abandonment (but not to Debtors) may be appropriate due to KSB's security interest in all of Viewpoint's assets. If the Domain Name was owned by Debtors, then abandonment is clearly not appropriate, as the estate would be entitled to the money. If the Domain Name was owned by PCG, then the issue of abandonment remains uncertain pending the resolution of any potential Chapter 5 claim by the Trustee against PCG, and the payment of any potential liabilities of PCG as that corporate entity is wound down.

---

[25] The Court notes that the ultimate outcome of this case will almost certainly result in no monetary benefit to Debtors. If the Domain Name belonged to Debtors on the date of filing, it was property of the estate. If the Domain Name belonged to Viewpoint, then KSB's security interest will likely result in its recovery of the proceeds from the sale of the Domain Name. If the Domain Name belonged to PCG, then the proceeds from the sale will be used to pay any liabilities of PCG, and then be distributed to its shareholders, which now includes only the bankruptcy estate.

11

Because the Court finds that the issue of ownership cannot properly be decided on a summary judgment motion, it sets this matter for evidentiary hearing on its **August 18-19, 2010** stacked evidentiary docket.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion for Summary Judgment[26] is denied. The Court further orders the Trustee to file a written response to Debtors' Motion to Exclude Hearsay Documents[27] within twenty-one (21) days from the date this order is entered.

###

---

[26] Doc. 167.

[27] Doc. 165.